UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____

ERIK F. SILVA

        Plaintiff,

v.                                        Case No.: _____

WALRUS AND CARPENTER
OYSTERS, LLC                      **JURY TRIAL DEMANDED**

        Defendant.

_____

**VERIFIED COMPLAINT UNDER SPECIAL RULE FOR SEAMAN TO
SUE WITHOUT SECURITY AND PREPAYMENT OF FEES
(28 U.S.C. § 1916) WITH DEMAND FOR JURY TRIAL**

Plaintiff, ERIK F. SILVA, sues Defendant WALRUS AND CARPENTER OYSTERS, LLC alleging as follows:[1]

SUMMARY OF THE CASE

1.      Erik was working aboard a vessel that was coming into a dock. He was stationed at the vessel's bow holding the bowline. The vessel was heavily laden and coming into the dock at too fast a speed for the conditions. As Erik attempted to assist the docking process, his right toe was crushed between the vessel and dock. He suffered a severe fracture in a way where the bone was broken into many pieces.

---

[1] This lawsuit is about a person. He had hopes and expectations for his life that were changed by the injuries he suffered as a crewmember. In this way, the undersigned law firm refers to him by his given name, Erik. This use of Plaintiff's given name is not done casually or with disregard for the seriousness of these proceedings. To the contrary, it's meant to highlight that this lawsuit concerns one of the most serious actions we believe a Court hears on the civil side . . . an action involving allegations of personal injury.

2. Image # 1 depicts Erik's injury after returning from South County Hospital Emergency Room.



Image # 1

3. Erik has tried to get on with his life, but his right toe is no longer normal and is rotated and has a very limited range of motion in a way that compromises his gait, causes him pain and has changed his baseline. Erik can't stand for long periods of time and he can't enjoy the basics of what had been his life without suffering pain and discomfort. Erik is worried about his future, about the diagnosed arthritis that's invaded the fracture site, about the pain he feels, about the pain arising from what's called his

compensatory gait and about future surgeries (his medical records reference the possible need for a fusion).

4. This lawsuit seeks fair and just compensation for what was taken from Erik. It also seeks payment of Maintenance and Cure (past and ongoing) and seeks to reinforce his rights to receive a properly calculated Maintenance payment as well as the medical care and guidance for which the concept of Cure embraces.

5. Image # 2 depicts the present-day condition of Erik's toe.



Image # 2

## THE PARTIES, JURISDICTION AND VENUE

6. Plaintiff, Erik F. Silva, is a 27 year-old U.S. citizen who maintains his permanent residence in the State of Rhode Island.

7. Defendant Walrus and Carpenter Oysters, LLC ("Company") is a business entity organized and existing under the laws of the State of Rhode Island and engaged in the commercial shellfish business.

8. The Company maintains its principal place of business in Narragansett, Rhode Island and is amenable to service by way of its registered agent Jules Opton-Himmel, 73 Harrison Street, Providence, RI 02909.

9. At all times material hereto, the Company owned and operated a Rhode Island registered vessel identified as a pontoon vessel powered by an outboard engine which was used for harvesting and sorting shellfish ("Vessel").

10. In addition to the Vessel, the Company owned and operated other vessels aboard which Erik worked at various times ("Fleet").

11. The Vessel and the Fleet are regularly operated in the navigable waters of Rhode Island and are within the territorial jurisdiction of the United States District Court for the District of Rhode Island.

12. At all times material hereto, the Vessel was in navigation.

13. At all times material hereto, the Vessel is a "vessel" as defined by Title 1 U.S.C. § 3.

14. On information and belief, the Company procured marine insurance for the Vessel which provides insurance coverage for Erik's claims.

15. On information and belief, the Company employed Erik as crew aboard the Vessel and the Fleet including on or around August 19, 2020.

16. At the time of the Incident, Erik had a multi-year history working aboard the Vessel and the Fleet on a full-time basis during the shellfish season; Erik reported to

work aboard the Vessel and the Fleet; Erik was assigned seaman jobs from anchoring to handling lines and Erik had a substantial connection in both duration and nature to the Vessel and the Fleet.

17. At all times material hereto, the crew aboard the Vessel including Erik were acting within the course and scope of their employment.

18. At all times material hereto, the Company agreed to pay Erik remuneration for his work aboard the Vessel as well as for his work aboard the Fleet.

19. On information and belief, at all times material hereto, the Company was the Jones Act employer of the crew serving aboard the Vessel and the Fleet, including Erik.

20. At all times material hereto, the Company is and was responsible for owning, operating, managing, crewing, equipping and maintaining the Vessel and the Fleet.

21. The Vessel and the Fleet are subject to common ownership and control by the Company.

22. The Company is subject to the personal jurisdiction of the State of Rhode Island.

23. This action is brought pursuant to the Jones Act, 46 U.S.C. § 30104, *et. seq.* and the General Maritime Law, 28 U.S.C. § 1333, Article III, Section 2 of the United States Constitution which empowers the federal judiciary to hear "all cases of admiralty and maritime jurisdiction," and all other applicable laws and statutes.

24. Venue in this Court is appropriate pursuant to 28 U.S.C. 1391(b)(1)-(2).

25. As a Jones Act seaman, Erik invokes the privileges provided him under Title 28 U.S.C. § 1916 to sue without security and prepayment of fees.

26. Erik has fulfilled all conditions precedent for filing this action.

## GENERAL ALLEGATIONS ABOUT THE INCIDENT

27. At all times material hereto, the Vessel and the Fleet were engaged in the business of shellfish harvesting in the New England fishery.

28. On or about June 23, 2021, Erik was aboard the Vessel transiting from a mooring to a dock located in Charleston, Rhode Island.

29. The Vessel was heavily laden with shellfish cages.

30. The Vessel was also carrying four persons one of whom was a trainee making the deck crowded.

31. The Vessel approached the dock at a speed that was too fast for the circumstances.

32. The Vessel was operated in a dangerous way as it approached the dock.

33. The Vessel risked colliding with the dock.

34. Erik attempted to assist in the docking as was a duty of his job and as he had done in other instances aboard the Vessel.

35. As he was attempting to keep the Vessel from striking the dock, Erik's foot became entrapped between the dock and the Vessel such that he was injured.

36. The injury resulted in Erik being unfit to perform his regular duties aboard the Vessel and the Fleet and he was taken to South County Hospital for emergency medical care.

37. A 911 call was made to summon an ambulance.

38. Erik was in a great deal of pain and during the ambulance ride he was administered Fentanyl to control the pain.

39. Erik's injury required medical care beyond First Aid.

40. On information and belief, the Company has not filed or submitted a Form CG-2692 (Report of Marine Casualty, Commercial Diving Casualty, or OCS Related Casualty) to the U.S. Coast Guard in connection with Erik's injury.

41. On information and belief, the Company has not filed or submitted a written report to the State of Rhode Island giving notice of the Incident and Erik's injuries all in violation of R.I. Gen. Laws § 46-22-21.

42. All of the medical treatment Erik has undergone arising from the Incident described herein and such medical treatment he will undergo in the future was and is causally related to the injuries he suffered aboard the Vessel.

43. Erik suffered and continues to suffer significant pain, suffering and emotional distress as a result of the incident described herein.

44. At all times material hereto, the Company knew or should have known of the facts supporting the negligence asserted herein including the defects in the Vessel.

45. At all times material hereto, Erik exercised due care in the performance of his duties.

## COUNT ONE

<u>UNSEAWORTHINESS CLAIMS AGAINST THE COMPANY</u>

46. Erik reasserts and realleges all of the preceding allegations as if fully set forth herein.

47. This unseaworthiness cause of action is governed by the federal maritime law of the United States of America.

48. Erik demands a jury trial of his unseaworthiness claim in accordance with the Supreme Court's ruling in <u>Fitzgerald v. United States Lines Co.</u>, 374 U.S. 16 (1962).

49. At all material times hereto, the Company had an absolute, non-delegable duty to provide a seaworthy vessel to Erik, which is reasonably safe and fit for its intended purposes.

50. On or about June 23, 2021, The Company breached its warranty to provide Erik with a reasonably safe and fit vessel because of one or more of the following defects:

    a. Failure to use due care to provide and maintain a seaworthy vessel with safe and proper appliances;

    b. Failure to provide adequate tools, equipment, protective equipment and safety devices;

    c. Failure and negligence of fellow employees;

    d. Insufficient crew;

    e. Failure to properly man the vessel;

    f. Failure to properly train the crew;

    g. Inappropriate hiring, training and retention policies inconsistent with industry practices;

    h. Failure to provide safe docking procedures and

     i. Failures and breaches in other respects as will be shown at trial.

 51. As a result of the Incident on or about June 23, 2021, Erik sustained serious personal injuries and/or aggravation of pre-existing physical conditions the full extent of which is not yet known; has in the past required and will in the future require medical treatment, care and attention; will be obliged to expend monies and incur obligations for medical care and attention; has in the past suffered and will in the future continue to suffer agonizing aches, pains and mental anguish; has in the past been, presently is, and will be in the future disabled from performing his usual duties, occupations and avocations and has and will in the future suffer a loss of earnings.

 52. The serious personal injuries sustained by Erik were not caused by any fault on his part, but were caused by the unseaworthiness of the Vessel.

 53. Erik was in the scope of his employment as a seaman at the time he sustained his serious personal injuries.

 54. The Vessel's unseaworthiness directly and proximately caused Erik to sustain damages consisting of, among other things, past and future medical expenses, past and future lost wages, loss of future earning capacity, past and future pain, suffering and loss of enjoyment of life, permanent physical impairment and disfigurement.

 55. Erik's injuries are permanent and continuing in nature.

 56. Erik demands judgment against the Defendant for all of his compensatory damages in an amount to be determined by a Jury together with interest and costs.

 WHEREFORE, Plaintiff, Erik F. Silva, moves the Court to enter final judgment in his favor awarding him all of his compensatory damages in an amount not less than

$1,000,0000.00 plus interest including prejudgment interest and costs against Defendant Walrus and Carpenter Oysters, LLC and for such other and further relief the Court deems just and proper.

## COUNT TWO

JONES ACT NEGLIGENCE CLAIM AGAINST THE COMPANY
FOR FAILURE TO PROVIDE A REASONABLY SAFE PLACE TO WORK

57. Erik reasserts and realleges all of the preceding allegations as if fully set forth herein.

58. Erik demands a jury trial for his Jones Act negligence cause of action.

59. At all times material hereto, the Company as the actual employer, owed a duty of reasonable care to provide Erik with a safe place to work.

60. The Company is vicariously liable for the acts and omissions of the Vessel's captain and crew.

61. On or about June 23, 2021, the Company breached its duty of reasonable care to provide Erik with a safe place to work because of one or more of the following acts or omissions:

    a.    Failure to provide adequate tools, equipment, protective equipment and safety devices;

    b.    Failure and negligence of fellow employees;

    c.    Insufficient crew;

    d.    Failure to use due care to provide Erik with a reasonably safe place in which to perform his work;

    e.    Failure to provide safe docking procedures;

    f.    Failure to properly train the crew;

      g.    Inappropriate hiring, training and/or retention policies inconsistent with industry practices;

      h.    Unsafe selection and/or retention of captain and crew to serve on the Vessel;

      i.    The Captain's unsafe operation of the Vessel;

      j.    An unsafe pattern, practice and policy of operating the Vessel and the Fleet and

      k.    Failure and negligence in other respects as will be shown at trial.

62. The Company failed to establish appropriate safety rules and procedures to prevent the Incident from happening.

63. At all times material hereto, the Company knew or should have known of the facts supporting the negligence asserted herein including the defects in the Vessel.

64. As a result of the Incident on or about June 23, 2021, Erik sustained serious personal injuries and/or aggravation of pre-existing physical conditions the full extent of which is not yet known; has in the past required and will in the future require medical treatment, care and attention; will be obliged to expend monies and incur obligations for medical care and attention; has in the past suffered and will in the future continue to suffer agonizing aches, pains and mental anguish; has in the past been, presently is, and will be in the future disabled from performing his usual duties, occupations and avocations and has and will in the future suffer a loss of earnings.

65. The serious personal injuries sustained by Erik were not caused by any fault on his part, but were caused by the Vessel's unsafe working conditions.

66. Erik was in the scope of his employment as a seaman at the time he sustained his serious personal injuries.

67. The Vessel's unsafe working conditions directly and proximately caused Erik to sustain damages consisting of, among other things, past and future medical expenses, past and future lost wages, loss of future earning capacity, past and future pain, suffering and loss of enjoyment of life, permanent physical impairment and disfigurement.

68. Erik's injuries are permanent and continuing in nature.

69. Erik demands judgment against the Defendant for all of his compensatory damages in an amount to be determined by a Jury together with interest and costs.

WHEREFORE, Plaintiff, Erik F. Silva, moves the Court to enter final judgment in his favor awarding him all of his compensatory damages in an amount not less than $1,000,0000.00 plus interest including prejudgment interest and costs against Defendant Walrus and Carpenter Oysters, LLC and for such other and further relief the Court deems just and proper.

## COUNT THREE

### MAINTENANCE AND CURE
### CLAIM AGAINST THE COMPANY

70. Erik reasserts and realleges all of the preceding allegations as if fully set forth herein.

71. Erik demands a jury trial of his maintenance and cure claim in accordance with the Supreme Court's ruling in <u>Fitzgerald v. United States Lines Co.</u>, 374 U.S. 16 (1962).

72. Under the general maritime law, the Company had and has a non-delegable duty to provide Erik with "Maintenance and Cure" until his treating physician(s) unequivocally determine he has reached maximum medical cure.

73. "Maintenance" is a daily living allowance that an employer is required to pay a seaman to support the seaman while he is injured and in need of medical treatment.

74. "Cure" is the payment of medical expenses to treat the seaman's injuries.

75. The Company had and has a non-delegable duty to investigate, manage and provide Erik's Maintenance and Cure until his treating physician(s) unequivocally determine he has reached maximum medical cure.

76. Erik is uncertain as to whether the Company has paid all of his past medical treatment costs and whether it intends to pay for his future costs.

77. Erik believes the Company failed to properly calculate the amount of his daily stipend (Maintenance) in a way that disadvantaged him.

78. In addition, the Company wrongly terminated the payment of Maintenance prior to Erik reaching maximum medical cure which termination was violative of his rights and disadvantaged him.

79. Erik has made a demand for payment of past Maintenance (representing the amount that should have been paid him) and going-forward Maintenance and receipt of the demand was acknowledged, but no substantive response received.

80. As a result of the serious personal injuries described above and which resulted from the Incident, Erik has incurred and will continue to incur expenses for his Maintenance and Cure for which he makes demand that the Company pay.

81. On information and belief, by reason of the Company's breach of its obligation to pay Maintenance and, as may be shown, Cure, Erik has suffered a loss for which he is entitled to compensation.

WHEREFORE, Plaintiff Erik F. Silva, demands judgment against the Defendant Walrus and Carpenter Oysters, LLC in an amount sufficient to fully and fairly compensate him for Maintenance and Cure, together with costs, interest and reasonable attorney fees.

## JURY DEMAND

Plaintiff, Erik F. Silva, demands a trial by jury on all issues so triable.

Dated: March 30, 2023
Newport, Rhode Island

    Fulweiler llc

By: /s/ John K. Fulweiler

John K. Fulweiler, Esq. (#7876)
W.B. Franklin Bakery Building
40 Mary Street
Newport, RI 02840
(401) 667-0977 – Telephone
1-800-383-MAYDAY
john@saltwaterlaw.com
www.saltwaterlaw.com
*Attorneys for Plaintiff*



## SEAMAN'S DECLARATION

I, Plaintiff, Erik F. Silva, was a seaman and I claim the benefits of the United States Code, Title 28, Section 1916 which provides that:

> In all courts of the United States, seamen may institute and prosecute suits and appeals in their own names and for their own benefit for wages or salvage or the enforcement of laws enacted for their health or safety without prepaying fees or costs or furnishing security therefor.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 30th day of March 2023.

_____
Erik F. Silva

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Erik F. Silva declare and state under penalty of perjury that the foregoing is true and correct:

1. I make this Declaration based on personal knowledge.

2. I have read the foregoing Verified Complaint and know the contents of the same to be true to the best of my knowledge.

3. The source of my knowledge and the grounds for my belief as to all matters stated in the Verified Complaint are my own, personal knowledge.

4. I declare under penalty of perjury that the foregoing is true and correct.

Dated:   March 30, 2021
         Newport, Rhode Island

_____
Erik F. SIlva